UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MUNDAY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>Defendant. | CASE NO. SACV 15-1629-JLS (KESx)<br><br>**ORDER DENYING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 32)** |

Before the Court is a Joint Motion for Preliminary Approval of Class Action Settlement filed by Plaintiff Ronald Munday and Defendant Navy Federal Credit Union. (Mot., Doc. 32.)[1] The parties ask the Court to (1) preliminarily approve the proposed settlement agreement, (2) conditionally certify the proposed class for settlement purposes, (3) authorize the form and manner of class notice, and (4) schedule a final approval hearing date. The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Accordingly, the hearing set for May 27, 2016, at 2:30 p.m., is VACATED. For the following reasons, the Court DENIES the Motion without prejudice.

## I. BACKGROUND

On October 9, 2015, Plaintiff Ronald Munday filed a class action complaint against Defendant Navy Federal Credit Union. (Compl., Doc. 1.) Plaintiff seeks damages, injunctive relief, and declaratory relief for allegedly knowing and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (*Id*. ¶¶ 30-41.) Specifically, Plaintiff alleges that Defendant unlawfully placed multiple prerecorded or artificial calls to Plaintiff and other members of the class without their prior express consent. (*Id*. at ¶ 31.) The parties agreed to participate in mediation to resolve the action. (Lemberg Decl. ¶ 14, Doc. 33-2.) On January 5, 2016, the parties attended a mediation session before the Honorable Leo S. Papas, a former Federal Magistrate Judge. (*Id*. ¶ 15.) The parties submitted mediation briefs, participated in a day-long mediation session, and accepted the mediator's proposal one week after the session concluded. (*Id*. ¶ 16.) Completion of the settlement was made contingent on confirmatory discovery into the size and composition of the proposed class, as well as other relevant issues. (Taylor Decl. ¶ 11, Doc. 33-3.)

---

[1] We note that the first page of the memorandum begins on page 9, rather than on page 1, following the table of contents and table of authorities. (*See* Mem., Doc. 33.) Any memorandum page numbers referenced in this Order shall refer to the page number actually printed at the bottom of the page.

Plaintiff therefore served written interrogatories, to which Defendant responded. (*Id.*) The discovery confirmed that between October 9, 2011 and March 14, 2016, Navy Federal used an automatic telephone dialing system to call 90,726 unique telephone numbers that were coded or were subsequently coded as "wrong numbers" in Navy Federal's records. (*Id.*)

The proposed settlement provides for a non-reversionary gross settlement fund of $2,750,000. (Joint Stip. at 10, Doc. 33-1.) The proposed settlement class is defined as: "all persons whom Navy Federal called on their cellular telephone numbers using an automatic telephone dialing system ("ATDS") between October 9, 2011 through the date of Preliminary Approval where the result of the call was that Navy Federal coded the number as a 'wrong number' in its records based on information provided by the call recipient." (*Id.* at 7-8.) The confirmatory discovery also provided that despite this internal coding, a portion of the coded "wrong numbers" were nonetheless called again by Navy Federal. (Taylor Decl. ¶ 11.) These additional calls allegedly occurred because of a "gap" in Navy Federal's system logic that allowed certain "wrong numbers" to return to the active dial list. (*Id.*) Plaintiff's Counsel asserts that "[a]s a result of this lawsuit, Navy Federal [also] found, closed and tested the gap to eliminate this problem from reoccurring in the future." (*Id.*)

Pursuant to the proposed settlement, the gross settlement fund will pay for court-approved class counsel fees and costs, an incentive award for the named Plaintiff, claims administrator costs, and individual settlement payments. (Joint Stip. at 8.) The parties agree that, subject to court approval, Plaintiff may move for (1) attorneys' fees and costs not to exceed, in the aggregate, 25% of the maximum settlement fund, and (2) an incentive award of up to $10,000. (*Id.* at 27-28.) The parties seek court approval to appoint AB Data, Limited as the third-party settlement administrator in this action. (*Id.* at 7.) AB Data estimates that it will expend approximately $95,000 in costs, and it has agreed to cap its costs at $120,000. (Taylor Decl. ¶ 17.) To receive any settlement benefits, class members

must submit a valid and timely claim form. (Joint Stip. at 10.) Claim forms will be considered timely if they are submitted electronically or postmarked no later than 30 days before the date set by this Court for the final approval hearing. (*Id*. at 17.) Upon submitting a valid and timely claim form, class members will receive a benefit check that reflects their *pro rata* share of the net settlement fund. (*Id*. at 10.) However, this pro-rata distribution is capped at $1,500 per class member. (*Id*. at 10.) Any unclaimed or uncashed benefit checks will be distributed to the agreed-upon *cy pres* recipient, the Armed Services YMCA. (*Id*. at 10.)

Settlement class members and class counsel will be deemed to have fully released and discharged the "Released Persons"[2] from:

> [A]ny and all past, present and future claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, including without limitation (i) those known or unknown or capable of being known, and (ii) those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time, including facts in the possession of and concealed by any Released Person, and (iii) those accrued, unaccrued, matured or not matured, all from the beginning of the world until today that arise out of the use by any or all of the Released Parties of any "automatic telephone dialing system," "automatic dialer," "automated dialer," "dialer," and/or an "artificial or prerecorded voice" to make calls to the cellular telephone number (to the fullest extent that those terms are used, defined, or interpreted under the TCPA, relevant regulatory or administrative promulgations, and case law) of any Settlement Class Member[.]

(*Id*. at 24-25.) Any individuals or entities that would assert claims on behalf of a class member are also deemed to have fully released the above claims. (*Id*. at 24-25.)

The settlement also enumerates a method of distributing notice packets to class members. Within ten days of the entry of the preliminary approval order, Navy Federal will provide the settlement administrator with a list of the class members' cellular telephone numbers. (*Id*. at 15.) The settlement administrator will perform a "reverse look-

---

[2] "Released Persons" are defined as Navy Federal and its parents, subsidiaries, affiliates, officers, directors, employees, attorneys, members, shareholders, agents, independent contractors, vendors, and assigns. (Joint Stip. at 7.)

4

up" and other appropriate investigations to identify (1) the owner of the cellular numbers at the time the call was coded by Navy Federal as a wrong number and (2) the owner's current mailing address. (*Id*. at 15-16.) After identifying mailing addresses through this process, the settlement administrator will use the U.S. Postal Service's National Change of Address database to update the addresses as necessary. (*Id*. at 16.) Within forty days of the preliminary approval order, the settlement administrator will mail the short-form class notice and a claim form to each class member for whom a mailing address was obtained. (*Id*.) Neither the parties nor the settlement administrator will have any obligation to mail a notice packet to any class member for whom no mailing address was identified through the above process. (*Id*.) If any notices are returned as undeliverable, the settlement administrator will re-mail the notice to the affixed forwarding address. (*Id*.) If no forwarding address is provided, neither the parties nor the settlement administrator will have any obligation to re-mail the notice packet. (*Id*.) The settlement administrator will also cause the Complaint, long-form class notice, claim form, settlement agreement, and other relevant settlement and court documents to be made available on a dedicated settlement website. (*Id*. at 17.) Class members may opt-out of the settlement or object to its terms no less than thirty days before the final approval hearing. (*Id*. at 20; Mem. at 15-16.)

Plaintiff now moves for preliminary approval of the proposed settlement.

## II. <u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>

### A. <u>Legal Standard</u>

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n of the City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). To preliminarily approve a proposed class-action settlement, Federal Rule of Civil Procedure 23(e)(2) requires the Court to determine

whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In turn, review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing. *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citation omitted), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). Accordingly, "[t]o determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[3] and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not []

---

[3] This factor does not apply in this case.

the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quotation marks omitted). In such circumstances, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks and citation omitted). Accordingly, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset*, 654 F.3d at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*.

At this preliminary stage and because Class Members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary . . . ." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of *possible* approval . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted) (emphasis added); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.").

### B. Discussion

In evaluating the applicable factors, the Court concludes that the proposed settlement should not be preliminarily approved. A notable deficiency as to the scope of the proposed release renders the settlement unreasonable such that it does not fall within the range of possible approval.

#### 1. Scope of the Release

The Court finds that the scope of the proposed release in this action bars preliminary approval of the proposed settlement. "[A] federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)). However, "while a release need not slavishly echo the claims in the complaint, it must appropriately track and not exceed them." *Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761 JD, 2014 WL 6065602, at *3 (N.D. Cal. Nov. 12, 2014) (citation omitted).

Here, the proposed release is written in a manner such that it does not appear to be limited to claims "'based on the identical factual predicate as that underlying the claims in the [] class action.'" *See Reyn's Pasta Bella*, 442 F.3d at 748 (citation omitted). Rather, class members forego claims "based upon facts other than or different from those facts known or believed at this time." (Joint Stip. at 25.) Moreover, while the release language identifies claims that "arise out of the use by any or all of the Released Parties of any 'automatic telephone dialing system,' 'automatic dialer,' 'automated dialer,' 'dialer,' and/or an 'artificial or prerecorded voice' to make calls to the cellular telephone number," the release also includes all-encompassing "including without limitation" language. (*Id.*) Therefore, it is unclear whether there is any real limitation on the release of claims "of *any and every kind*" against the Defendant, whether known or unknown, "from the beginning

of the world until today." (*Id*. (emphasis added).) In short, because the release does not appropriately track the extent and breadth of Plaintiff's allegations in the Complaint, the Court finds that the settlement agreement "suffers from an obvious deficiency" that precludes preliminary approval. *See Christensen v. Hillyard, Inc*., No. 13-cv-04389, 2014 WL 3749523, at *4 (N.D. Cal. July 30, 2014) (denying preliminary approval of a class action settlement in part because the proposed release "does not 'directly track the allegations in the complaint.'" (citation omitted)).

When reviewing a motion for preliminary approval, the district court does not have "the ability to 'delete, modify or substitute certain provisions'" of the proposed settlement agreement. *Hanlon*, 150 F.3d at 1026 (quoting *Officers for Justice*, 688 F.2d at 630). The settlement must therefore "stand or fall in its entirety." *Id*. Accordingly, this deficiency in the proposed release precludes preliminary approval of the settlement agreement as a whole. The Court therefore DENIES WITHOUT PREJUDICE Plaintiff's Motion.

### 2. *Cy Pres* Recipient

The proposed settlement also provides that unclaimed or uncashed benefit checks will be given to a *cy pres* recipient, the Armed Services YMCA. (*See* Joint Stip. at 10.) Should the parties renew their request for preliminary approval of a modified settlement, the Court notes they must provide additional information justifying this *cy pres* proposal. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary." *Dennis v. Kellogg Co*., 697 F.3d 858, 865 (9th Cir. 2012). "A *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members,' and must not benefit a group 'too remote from the plaintiff class[.]'" *Id*. (citations omitted). In their brief, the parties fail to explain how the proposed *cy pres* recipient bears a sufficient relation to the settlement class. If the parties move again for preliminary approval of a class action settlement, they must provide this information or identify and agree upon another suitable *cy pres* recipient.

9

### III. CONDITIONAL CLASS CERTIFICATION AND NOTIFICATION PROCEDURES

Because the Court denies preliminary approval of the settlement, the Court DECLINES to determine, at this time, (1) whether conditional certification of the class for settlement purposes is appropriate or (2) whether the proposed content and method of class notice is sufficient. *See Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939-HSG, 2015 WL 2266680, at *5 (N.D. Cal. May 14, 2015); *Myles*, 2014 WL 6065602, at *6; *Christensen*, 2014 WL 3749523, at *4.

### IV. CONCLUSION

For the reasons discussed above, the Court DENIES Plaintiff's Motion but grants leave to move again for preliminary approval should the parties reach a settlement agreement that cures the deficiencies identified in this Order. **By June 24, 2016**, (a) the parties must file a renewed motion for preliminary approval of a class action settlement that cures the above deficiencies or, if no motion will be filed, (b) Defendant must file an Answer or otherwise respond to the Complaint in this action.

DATED: May 26, 2016

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE